Plaintiff's Name __KWESI MUHAMMAD__

Prisoner No. __P84376__

Institution __CORRECTIONAL TRAINING FACILITY__

____P.O. Box 689____

____SOLEDAD, CA 93960____

Number of pages __2 6__

Received on __July 24, 2026__

Scanned/emailed on __July 24, 2026__

by __Martinez__ at __CTF__

for the Northern District of California.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

__KWESI MUHAMMAD__

*(Enter your full name)*

V.

__GREGORY GASH,__

__DAYSI RUBACLAVA,__

__LANCE ESHELMAN,__

__DOES 1-5.__

*(Enter the full name(s) of all defendants in this action)*

Case No._____

*(Provided by the Clerk upon filing)*

COMPLAINT BY A PRISONER
UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

## I. Exhaustion of Administrative Remedies.

*You must exhaust the remedies available at your institution before your claim(s) can go forward. The court will dismiss any unexhausted claims.*

A. Place of present confinement __Correctional Training Facility, Soledad, CA.__

B. Is there a grievance procedure in this institution?  ☒ YES  ☐ NO

C. If so, did you present the facts in your complaint for review through the grievance procedure?
☒ YES  ☐ NO

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

1. Informal appeal: __N/A__

2. First formal level: __Grievance Log No. 848518, denied on 12/31/2025.__

__Grievance Log No. 855856, denied on 1/22/2026.__

__Grievance Log No. 910459, granted on 5/8/2026.__

3.    Second formal level: Grievance Log No. 848518, Time Expired 3/15/26.

Grievance Log No. 855856, denied on 3/25/26.

4.    Third formal level:

E.  Is the last level to which you appealed the highest level of appeal available to you?
☒ YES        ☐ NO

F.  If you did not present your claim for review through the grievance procedure, explain why.

## II. Parties.

A.  If there are additional plaintiffs besides you, write their name(s) and present address(es).

B.  For each defendant, provide full name, official position and place of employment.
GREGORY GASH, Correctional Food Manager, Correctional Training Facility;

DAYSI RUBACLAVA, Asst. Correctional Food Manager, CTF;

LANCE ESHELMAN, Departmental Food Administrator, CDCR;

DOES 1-5, CTF culinary and food service employees.

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

See attached Complaint.

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

**See attached Complaint.**

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   July 23, 2026
                            Date

_____
Signature of Plaintiff

Kwesi Muhammad
P84376, FW-135L
P.O. Box 689
Soledad, CA 93960

Plaintiff in Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KWESI MUHAMMAD,                     )        CASE NO.
                                    )
              Plaintiff,            )        CIVIL RIGHTS COMPLAINT FOR
                                    )        DAMAGES, DECLARATORY RELIEF,
                                    )        AND INJUNCTIVE RELIEF
                                    )
                                    )        JURY TRIAL DEMANDED
                                    )
v.                                  )
                                    )
                                    )
                                    )
                                    )
GREGORY GASH, DAYSI                 )
RUBACLAVA, LANCE ESHELMAN,          )
DOES 1-5,                           )
                                    )
              Defendants.           )
                                    )

NATURE OF ACTION

1. Plaintiff Kwesi Muhammad is an approved participant in the California Department of Corrections and Rehabilitation's Kosher Diet Program (KDP) at the Correctional Training Facility (CTF).

2. Plaintiff sincerely believes that participation in the KDP satifies his religious dietary obligations. His religious exercise includes participation in the religious observances and festival meals administered through that program, including the Passover meal offered to KDP participants.

///

///

2(1)

3. This action challenges a related course of conduct involving the administration of the KDP by the same institutional food service and responsible officials, including:

   a. The systematic provision of only one hot meal per day to KDP participants while similarly situated participants in other approved diet programs received two hot meals;

   b. The denial of Passover meals to Plaintiff because he was allegedly "not Jewish," notwithstanding his approved KDP status and sincere religious practice;

   c. The repeated distribution of tuna products past their printed "Best By' date, displaying apparent signs of deterioration;

   d. The subsequent distribution of tuna pouches bearing no visible "Best By" date or comparable shelf information;

   e. The repeated service of kosher entrees below applicable food safety temperatures; and

   f. Defendants' failure to implement adequate corrective measures after receiving notice through grievances and documentary evidence.

4. Plaintiff does not assert that a violation of California prison regulations, standing alone, creates a federal constitutional claim. The applicable regulations, menus, grievance findings, and food safety requirements are alleged as evidence of Defendants' knowledge, discriminatory treatment, ability to provide alternatives, and deliberate failure to correct known conditions.

5. The incidents arise from the sane KDP food service system, involve overlapping Defendants, records, policies, witnesses, supervisory responsibilities, and questions of law and fact, and therefore constitute the same transactions for the purposes of Federal Rules of Civil Procedure 18 and 20.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§2000cc through 2000cc-5.

///

2(2)

7. This Court has federal question and civil rights jurisdiction under 28 U.S.C. §§1331 and 1343.

8. This Court may grant declaratory relief under 28 U.S.C. §§2201 and 2202.

9. This Court has supplemental jurisdiction over Plaintiff's related claim under California Civil Code §52.1 pursuant to 28 U.S.C §1367 because the state and federal claims arise from a common nucleus of operative facts.

10. Venue is proper in the Northern District of California under 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred at CTF in Soledad, Monterey County, California.

## PARTIES AND CAPACITIES

11. Plaintiff Kwesi Muhammad is an incarcerated person currently confined at CTF.

12. Plaintiff was an approved KDP participant at all times relevant yo this complaint.

13. Defendant Gregory Gash was, at all relevant times, the Correctional Food Manager responsible for CTF food service operations, including KDP meal allocation, preparation, distribution, product inventory, food temperature compliance, religious meal substitutions, and supervision of culinary staff.

14. Defendant Gash personally authorized the use of standard kosher meals as substitutes during the April 7 and 8, 2026 Passover meal shortage.

15. Defendant Gash also received notice through Plaintiff's grievances concerning the unequal number of hot meals, improper temperature controlled entrees, past-date tuna products, products displaying apparent deterioration, and discriminatory Passover meal distribution.

16. Defendant Daysi Rubaclava was, at all relevant times, the Assistant Correctional Food Manager responsible for assisting in the management, imple-mentation, supervision, and enforcement of CTF food service and KDP operations.

2(3)

17. On information and belief, Defendant Rubaclava participated in implementing the Passover meal allocation decision, supervised the employees who communicated and enforced that decision, and had operational authority to address the unsafe and unequal KDP practices reported by Plaintiff.

18. Defendant Lance Eshelman was, at all relevant times, the CDCR Departmental Food Administrator responsible for statewide food service standards, standardized religious diet menus, and oversight of CDCR religious diet operations.

19. The standardized CTF weekly kosher menus in effect during the relevant time frame bore Defendant Eshelman's name and approval as Departmental Food Administrator and reflects a meal structure consisting principally of boxed breakfasts, boxed lunches, and one hot dinner entree per day.

20. Plaintiff's claims against Defendant Eshelman are not based merely on his title. They arise form his personal approval and maintenance of the standardized KDP menu and his continuing authority to correct the statewide policy and practices challenged in this action.

21. Plaintiff sues Defendants Gash, Rubaclava, and Eshelman in their individual capacities for damages under §1983 to the extent each Defendant's own acts, decisions, approvals, or deliberate inaction caused the violations alleged.

22. Plaintiff sues Defendants Gash, Rubaclava, and Eshelman in their official capacities for prospective declaratory and injunctive relief because they possess institutional or statewide authority to implement the requested relief.

23. DOES 1-5 are CTF culinary or food service employees whose identities are presently unknown. They include the employee or employees who informed Plaintiff that Passover meals would only be provided to Jewish inmates and who personally withheld the Passover meals from Plaintiff.

24. Plaintiff will seek leave to substitute the true names of the Doe Defendants after obtaining information through discovery.

25. Each Defendant acted under color of California law.

26. No Defendant is sued under a theory of respondeat superior. Liability is alleged only for each Defendant's own participation, direction, approval, implementation, ratification, or culpable failure to act after recieving notice and having authority to correct the violation.

## ADMINISTRATIVE EXHAUSTION

27. Plaintiff exhausted the administrative remedies available to him concerning the claims in this action, as required by 42 U.S.C. §1997e(a).

A. Two Hot Meal and Temperature Grievance

28. On December 29, 2025, Plaintiff submitted CDCR Form 602-1, assigned Log No. 855856, challenging the denial of two hot meals per day to KDP participants and the repeated service of kosher dinner entrees below applicable food safety temperatures.

29. The Office of Grievances denied the grievance on January 23, 2026.

30. Plaintiff timely appealed, explaining that an internal operational provision allowing limited menu variations could not reasonably be interpreted as authorizing the categorical elimination of a mandatory hot meal or the unequal treatment of KDP participants.

31. The Office of Appeals issued its decision on or about March 25, 2026, completing the administrative review process.

B. Past-Date and Unsafe Tuna Grievance

32. On December 11, 2025, Plaintiff submitted CDCR Form 601-2, assigned Log No. 848518, concerning tuna pouches bearing an August 19, 2025 "Best By" date that continued to be distributed in or about September 2025.

33. Plaintiff alleged that opened pouches displayed discoloration, paste like texture, foul order, and other apparent signs of deterioration inconsistent

2(5)

with ordinary tuna products.

34. The Office of Grievance denied the claim, relying upon a generalized assertion that the product's shelf life could be extended beyond the printed date.

35. Plaintiff appealed and explained that the response did not identify a product specific manufacture extension, documented inspection, lot certification, or other reliable evidence establishing that the particular pouches remained safe.

36. On March 15, 2026, the Office of Appeals issued its final response stating that CDCR had not completed its response within the prescribed period and that the decision exhausted the available administrative remedies regarding Log No. 848518.

C. Passover Meal Grievance

37. On April 13, 2026, Plaintiff submitted CDCR Form 602-1, assigned Log No. 910459, concerning the denial of Passover dinner meals on April 7 and 8, 2026.

38. Plaintiff reported that CTF culinary staff expressly told him that, because of a shortage, the available Passover meals would be provided only to inmates who were Jewish and that Plaintiff would not receive one because he was not Jewish.

39. On May 8, 2026, the Office of Grievance granted Plaintiff's grievance.

40. The written decision acknowledged that a shortage had occurred, that the Food Manager had authorized substitute meals, that the directive was improperly communicated as a religious restriction rather than a logistical measure, and that staff retraining was required.

41. Plaintiff alleges that no further administrative remedy was capable of restoring the two religious meals already denied or providing additional corrective relief after CDCR granted the grievance and ordered retraining.

2(6)

COMPLIANCE WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT

42. On April 27, 2026, Plaintiff executed a California Government Claim arising from the discriminatory denial of Passover meals, unequal number of hot meals, improper temperature controlled entrees, and past date tuna products, which displayed apparent deterioration.

43. The Department of General Services received the claim on May 12, 2026.

44. The claim identified the incidents from Grievance Log Nos. 848518, 855856, and 910459, Plaintiff's injuries, and the constitutional and statutory bases of his claim.

45. More than 45 days elapsed after presentation of the claim without Plaintiff receiving written action or entering into a written agreement extending the time for action.

46. The claim was therefore deemed rejected under California Government Code §914.4(c), permitting Plaintiff to proceed on his related Bane Act claim.

47. Plaintiff has complied, or substantially complied, with the claim presentation requirements applicable to the state law cause of action asserted in this complaint.

FACTUAL ALLEGATIONS

A. Plaintiff's Sincerely Held Religious Exercise

48. Plaintiff sincerely believes that the KDP provides food consistent with his religious dietary obligations.

49. Plaintiff's religious exercise is not based on convenience or ordinary food preference.

50. Plaintiff sought the Passover meal because participating in KDP's Passover observance and consuming the religious meal provided through that program was consistent with and important to his sincerely held religious beliefs.

2(7)

51. CDCR approved Plaintiff for participation in the KDP before any of the events alleged in this complaint.

52. Plaintiff's entitlement to constitutional protection does not depend upon whether Defendants considered Plaintiff a formal member of a particular denomination. The relevant issue is the sincerity of Plaintiff's religious practice and the burden imposed upon it.

B. Unequal Provision of Hot Meals

53. California Code of Regulations, title 15, §3050(a)(2), provides for three meals daily, including two hot meals.

54. CDCR's operational provisions contain materially similar language regarding two hot meals and permit limited variations to accommodate religious diet programs and institutional emergencies.

55. The limited authority to make menu variations does not reasonably authorize the permanent or categorical elimination of a hot meal from one religious program.

56. The standardized CTF KDP menu approved by Defendant Eshelman provides boxed breakfasts and lunches and generally only one hot dinner entree per day, with at least one cold boxed dinner reflected on the weekly menu.

57. Plaintiff and other KDP participants were therefore routinely provided only one hot meal per day.

58. Upon information and belief, similarly situated inmates participating in other approved CDCR diet programs—including vegetarian, plant-based, and religious meat alternative programs—received two hot meals per day.

59. Plaintiff repeatedly notified Defendants Gash and Rubaclava of this unequal treatment and requested a hot kosher breakfast or a substantively equivalent second hot meal.

60. Defendants did not identify a security need, emergency, or individualized religious reason requiring KDP participants to receive fewer hot meals

than similarly situated participants in other programs.

61. Defendants instead relied upon general operational language and the standardized menu approved by Defendant Eshelman.

62. The unequal meal structure remains ongoing.

C. Improperly Temperature-Controlled Meals

63. Plaintiff repeatedly received kosher dinner entrees that were not maintained or served at applicable minimum food safety temperatures.

64. Improper temperature control materially increases the risk that pre-packaged food will become unsafe.

65. Plaintiff notified Defendants Gash and Rubaclava of the temperature problem through Grievance Log No. 855856 and requested verifiable temperature monitoring.

66. Defendants possessed authority to require temperature logs, critical control-point documentation, inspections, and corrective measures.

67. Despite receiving notice, Defendants failed to establish a reliable practice that prevented recurring temperature deficiencies.

D. Past Date Tuna Products Showing Apparent Deterioration

68. Beginning in or around September 2025, Plaintiff repeatedly received tuna pouches through the KDP bearing a printed "Best By" dated of August 19, 2025.

69. When opened, some of the tuna pouches appeared discolored and unusually gray, possessed a paste like texture and foul odor, and appeared materially different from ordinary tuna products.

70. Plaintiff reported the condition through Grievance Log No. 848518 and supplied photographic evidence.

71. Defendants did not provide Plaintiff with product specific manufacturer documentation establishing that the affected lots had been inspected and re-mained suitable for distribution.

2(9)

72. Defendants instead relied upon a generalized assertion that shelf life could be extended beyond the printed date.

73. Plaintiff does not allege that passing a printed "Best By" date, standing alone, necessarily establishes an Eighth Amendment violation.

74. Plaintiff's claim is based upon the repeated distribution of products past the printed date together with observable signs of deterioration, improper and/or inadequate product verification, and continued distribution after Defendants received notice.

E. Subsequent Distribution of Undated Tuna Pouches

75. On or about February 23, 2026, after Plaintiff had complained about the past date tuna, Plaintiff began receiving tuna pouches bearing no visible "Best By" date or comparable shelf-life information.

76. The absence of visible date information prevented Plaintiff from determining whether the product remained within the manufacturer's designated shelf-life period and prevented meaningful independent verification of the product's age.

77. Defendants continued distributing the undated pouches after being placed on notice of Plaintiff's food safety concerns.

78. The transition from past date products to products bearing no visible date did not reasonably resolve the underlying need for transparent inventory controls, traceability, and food safety verification.

F. Availability of Properly Dated Replacement Products

79. On or about June 1, 2026, Plaintiff began receiving tuna pouches bearing a September 16, 2027 "Best By" date.

80. The eventual distribution of clearly dated products with a substantially later date demonstrates that Defendants possesses the operational ability to obtain and distribute replacement inventory.

///

81. The sequence—from past date products displaying apparent deterioration, to products with no visible date, and finally to products bearing a September 16, 2027 date—supports a reasonable inference that adequate correction was feasible and that the earlier deficiencies resulted from inadequate inventory control, quality assurance, or supervisory review.

82. The later appearance of properly dated inventory does not eliminate the need for prospective relief because Defendants have not provided Plaintiff with a binding policy or assurance establishing adequate date verification, lot tracking, and prevention of recurrence.

G. Discriminatory Denial of Passover Meals

83. On April 7 and 8, 2026, CTF administered Passover dinner meals through the KDP.

84. A shortage existed in the number of available Passover meal kits.

85. Defendant Gash personally authorized standard kosher meals as substitutes during the shortage.

86. Culinary staff acting under the food management chain of command informed Plaintiff that the limited Passover meals would be given only to inmates who were Jewish.

87. The staff expressly told Plaintiff that he would not receive the Passover meal because he was not Jewish.

88. Plaintiff was an approved KDP participant and requested the Passover meal as part of his sincere religious exercise.

89. Defendants and their subordinates nevertheless required Plaintiff to choose between accepting a standard non-Passover meal and foregoing the religious meal associated with the observance.

90. The discriminatory statement was not an isolated verbal insult. It accompanied the actual withholding of the religious meal by officials exercising exclusive control over Plaintiff's access to institutional food.

2(11)

91. The responsible staff possessed the immediate ability to enforce the restriction because Plaintiff could not independently obtain the institutional Passover meal.

92. Jewish KDP participants were allowed to receive the limited Passover meals while Plaintiff, an approved non-Jewish KDP participant, was excluded.

93. The classification was based expressly on religious identity rather than Plaintiff's approved KDP status, sincere belief, or a neutral allocation procedure.

94. Less restrictive and nondiscriminatory alternatives were available, including advance inventory planning, neutral distribution among approved participants, verification of which participants intended to observe the meal, or equitable substitution procedures unconnected to denominational identity.

95. CDCR subsequently granted Plaintiff's grievance and acknowledged that the restriction had been improperly communicated as a religious matter.

96. CDCR directed staff retraining concerning religious meal administration.

97. The grievance decision corroborates that the discriminatory communication occurred and that the administration of the shortage was sufficiently improper to require corrective action.

98. The grievance decision does not, by itself, conclusively establish constitutional liability, but it constitutes evidence of the incident, institutional notice, available corrective measures, and the adequacy of the original implementation.

H. Defendants' Personal Participation

99. Defendant Gash personally authorized the Passover substitution decision, supervised the food service employees who enforced it, controlled KDP meal allocation, received notice of the discriminatory implementation, and

2(12)

possessed authority to prevent or correct it.

100. Defendant Gash also exercised operational responsibility over tuna inventory, meal temperatures, and KDP distribution practices challenged through Plaintiff's grievances.

101. Defendant Rubaclava assisted in implementing and supervising CTF food service operations and, on information and belief, participated in enforcing or supervising the Passover allocation and the continuing KDP food distribution practices.

102. Defendants Gash and Rubaclava received actual notice of recurring food safety and religious diet deficiencies through Plaintiff's grievances and supporting evidence.

103. Defendant Eshelman personally approved the standardized weekly KDP menu that institutionalized the one hot meal structure challenged by Plaintiff.

104. Defendant Eshelman possesses statewide authority over standardized religious diet menus and the ability to modify or correct the ongoing KDP meal structure.

105. The Doe Defendants personally communicated and enforced the restriction that Passover meals would be provided only to Jewish inmates and personally withheld the meal from Plaintiff.

## FIRST CAUSE OF ACTION

**42 U.S.C. §1983 First Amendment—Free Exercise of Religion**

(Against **Defendants Gash, Rubaclava, Eshelman, and Does 1-5 as Applicable**)

106. Plaintiff re-alleges paragraphs 1 through 105.

107. Incarcerated persons retain the right to food sufficient to sustain their health that satisfies their sincerely held religious dietary practices. McElyea v. Babbitt (9th Cir. 1997) 833 F.2d 196, 198; Shakur v. Schriro (9th Cir. 2008) 514 F.3d 878, 884-85; Long v. Sugai (9th Cir. 2024) 91 F.4th 1131.

2(13)

108. The religious practice need not be compelled by or central to an established denomination. The relevant inquiry concerns sincerity, not official denominational identity. Shakur, 514 F.3d at 884-85; Harris v. Muhammad (9th Cir. Feb. 4, 2026) No. 24-3307, slip op. at 9-11.

109. The denial of a festival related religious meal already available to other incarcerated persons may substantially burden religious exercise when the plaintiff sincerely contends that the meal is part of his faith. Fuqua v. Raak (9th Cir. 2024) 120 F.4th 1346

110. Plaintiff sincerely believed that the KDP's Passover meal was consistent with and important to his religious exercise.

111. Defendants substantially burdened Plaintiff's religious exercise by:

a. Denying him the Passover meals because he was not Jewish;

b. Requiring him to accept an ordinary meal in place of the requested religious meal or go without the Passover meal;

c. Using denominational identity rather than sincere belief or approved KDP status to control access; and

d. Maintaining unequal KDP practices that interfered with meaningful religious diet participation.

112. The asserted shortage may explain the need for some form of neutral allocation or substitution, but it does not justify distributing religious meals based expressly on denominational identity when non-discriminatory alternatives were available.

113. The denominational restriction was not reasonably related to a legitimate penological interest under Turner v. Safley (1987) 482 U.S. 78, 89-91.

114. Defendants Gash, Rubaclava, and the Doe Defendants personally participated in, directed, implemented, or failed to prevent the discriminatory Passover denial.

115. Defendant Eshelman personally approved and maintained the standardized KDP menu structure that causes the continuing meal disparity alledged

2(14)

by Plaintiff.

116. Defendants acted intentionally, knowingly, or with reckless disregard for Plaintiff's clearly protected religious rights.

117. Their conduct violated the Free Exercise Clause of the First Amendment.

## SECOND CAUSE OF ACTION

### 42 U.S.C. §1983, Fourteenth Amendment--Equal Protection

### (Against Defendants Gash, Rubaclava, Eshelman, and Does 1-5 as Applicable)

118. Plaintiff re-alleges paragraphs 1 through 117.

119. The Equal Protection Clause protects incarcerated persons from intentional discrimination based upon religion. To prevail, Plaintiff must show that Defendants intentionally treated him differently from similarly situated persons because of a discriminatory classification. Shakur, 514 F.3d at 891; Fuqua, 120 F.4th 1346

120. Plaintiff was similarly situated to Jewish inmates who:

a. Were enrolled in the same KDP;

b. Were housed at the same institution;

c. Were subject to the same Passover meal shortage; and

d. Requested the same Passover meal.

121. Plaintiff was denied the meal while Jewish KDP participants were allowed to receive it.

122. Culinary staff expressly stated that the difference in treatment was because Plaintiff was not Jewish.

123. Plaintiff was also similarly situated to inmates participating in other approved religious or specialized diet programs with respect to the institutional provision of meals.

124. Upon information and belief, those participants received two hot meals daily while KDP routinely receive only one.

125. The express denominational restriction and standardized unequal

2(15)

menu structure support an inference of purposeful differential treatment.

126. Defendants lacked a sufficient legitimate penological justification for using denominational identity instead of neutral program eligibility and sincere religious practice to allocate the limited Passover meals.

127. Defendants' conduct intentionally denied Plaintiff equal protection of the laws.

### THIRD CAUSE OF ACTION

**42 U.S.C. §2000cc-1, Religious Land Use and Institutionalized Persons Act (For Prospective Relief Against Gash and Eshelman in Their Official Capacities)**

128. Plaintiff re-alleges paragraphs 1 through 127.

129. CDCR is a governmental entity operating programs and activities that receive federal financial assistance.

130. RLUIPA prohibits a government from imposing a substantial burden upon an incarcerated person's religious exercise unless the government proves that the burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §2000cc-1(a).

131. RLUIPA defines religious exercise broadly and does not require Plaintiff to demonstrate that the practice is compelled by or central to a particular denomination. 42 U.S.C. §2000cc-5(7)(A).

132. Defendants substantially burdened Plaintiff's religious exercise by denying access to the Passover meal provided through his approved religious diet program and by conditioning access on demonminational identity.

133. The availability of neutral allocation procedures, advance ordering, participant verification, and equal substitution procedures demonstrates that denominational exclusion was not the least restrictive means of addressing a shortage.

134. Defendants Gash and Eshelman possess present authority to establish and enforce constitutionally compliant KDP policies and therefore are proper

official-capacity Defendants for prospective relief.

135. Plaintiff seeks only prospective declaratory and injunctive relief under RLUIPA. He does not seek RLUIPA damages against the State or against the individual Defendants in their personal capacities. See Sossamon v. Texas (2011) 563 U.S. 277; Landor v. Louisiana Department of Corrections & Public Safety (2026) 609 U.S. ___.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. §1983, Eighth Amendment—Unsafe Food Conditions

### (Against Defendants Gash and Rubaclava in Their Individual Capacities)

136. Plaintiff re-alleges paragraphs 1 through 135.

137. The Eighth Amendment requires prison officials to provide food adequate to maintain health and served under conditions that do not present an unreasonable danger to health. Keenan v. Hall (9th Cir. 1996) 83 F.3d 1083, 1091; Foster v. Runnels (9th Cir. 2009) 554 F.3d 807, 812-13.

138. An official acts with deliberate indifference when the official knows of and disregards a substantial risk to inmate health or safety. Farmer v. Brenan (1994) 511 U.S. 825, 837.

139. Plaintiff does not rest this claim on the technical passage of a "Best By" date alone.

140. The claim rests upon the combined and repeated circumstances of:

a. Tuna pouches distributed after the printed date;

b. Visible discoloration, abnormal paste-like consistency, and foul odor;

c. Recurring temperature control deficiencies;

d. The subsequent distribution of pouches with no visible date information;

e. The absence of product specific inspection or manufacturer documentation; and

f. Continued distribution after Defendants received written notice and photographic evidence.

141. Defendants Gash and Rubaclava knew of the challenged conditions

2(17)

through Plaintiff's grievances and supporting documentation.

142. They possessed operational authority to inspect inventory, quarantine questionable lots, obtain replacement stock, document shelf life extensions, maintain temperature controls, and cease distribution of products displaying apparent deterioration.

143. The later distribution of pouches bearing a September 16, 2027 date supports the inference that clearly dated replacement inventory was obtainable and that adequate correction was feasible.

144. Despite notice and authority, Defendants failed to implement timely and reliable corrective measures.

145. Their conduct constituted deliberate indifference to an objectively serious risk of unsafe food distribution in violation of the Eighth Amendment.

FIFTH CAUSE OF ACTION

California Civil Code §52.1, Tom Bane Civil Rights Act

(Against Gash, Rubaclava, and Does 1-5 in Their Individual Capacities)

146. Plaintiff re-alleges paragraphs 1 through 145.

147. California Civil Code §52.1 prohibits intentional interference, by threat, intimidation, or coercion, with rights secured by federal of California law.

148. A Bane Act claim requires the specific intent to violate or act in reckless disregard of the protected right, but does not invariably require coercion transactionally independent from an intentional constitutional violation. Cornell v. City & County of San Francisco (2017) 17 Cal.App.5th 766, 801-03; Reese v. County of Sacramento (9th Cir. 2018) 888 F.3d 1030, 1043-45.

149. Plaintiff's claim does not rest upon speech alone.

150. Defendants and their subordinates exercised exclusive control over Plaintiff's access to institutional meals and actually withheld the Passover meals.

151. The statement that only Jewish inmates would receive the limited meals is alleged as evidence of discriminatory purpose accompanying the coercive act of withholding the meals.

152. Defendants forced Plaintiff to choose between abandoning the requested religious observance by accepting a standard non-Passover meal or foregoing the religious meal entirely.

153. A person confined in prison cannot independently obtain the institutional religious meal, select a different provider, or avoid the officials controlling its distribution.

154. The use of that exclusive authority to deny the meal based expressly upon religious identity constitutes coercive interference with Plaintiff's Free Exercise and Equal Protection rights.

155. Defendant Gash personally authorized the allocation and substitution decision under which the discrimiatory restriction was implemented.

156. On information and belief, Defendant Rubaclava participated in implementing or supervising that decision and failed to correct the religious restriction despite possessing the authority to do so.

157. The Doe Defendants personally communicated and enforced the discriminatory condition and withheld the meal.

158. The express religious classification, actual meal deprivation, and Defendants' authority over Plaintiff's access support the inference that the responsible Defendants specifically intended to interfere with Plaintiff's protected rights or acted in reckless disregard of those rights.

159. CDCR's subsequent grant of Plaintiff's grievance and order requiring staff retraining further support notice of the improper administration and the need for corrective action.

160. Defendants' conduct violated California Civil Code §52.1.

///

2(19)

## INJURIES

161. As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

a. Loss of meaningful participation in two Passover religious meals;

b. Denial of equal access to an approved religious accommodation;

c. Interference with sincerely held religious exercise;

d. Humiliation and dignitary injury from being told he was ineligible because he was not Jewish;

e. Emotional and spiritual distress;

f. Exposure to apparently deteriorated or inadequately verified food products;

g. Uncertainty regarding the safety and traceability of KDP product; and

h. Continuing risk of recurrence absent enforceable corrective relief.

162. Plaintiff seeks compensatory damages for proven actual injuries to the extent permitted by 42 U.S.C. §1997e(e) and other applicable law.

163. Plaintiff independently seeks nominal damages for the completed violations of his constitutional rights.

164. Plaintiff seeks punitive damages against the individual Defendants whose conduct is proven to have been malicious, oppressive, or undertaken in reckless or callous disregard of Plaintiff's federally protected rights.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment declaring that Defendants' acts and practices violated Plaintiff's right under the First, Eighth and Fourteenth Amendments;

2. Enter judgment declaring that the ongoing religious diet practices described in this complaint violate RLUIPA;

3. Issue preliminary and permanent injunctive relief requiring Defendants to administer the KDP without excluding approved participants from religious festival meals solely because of a denominational label;

2(20)

4. Require Defendants to utilize neutral, nondiscriminatory criteria when shortages affect religious meals;

5. Require Defendants to provide KDP participants treatment equal to similarly situated participants in other approved religious and specialized diet programs unless Defendants establish a lawful and adequately supported basis for different treatment;

6. Require constitutionally adequate inventory control, date and lot traceability, product inspection, temperature monitoring, and corrective procedures for KDP meals;

7. Require Defendants to cease distributing products displaying apparent spoilage or deterioration and to provide reliable verification before distributing products beyond a printed manufacturer date;

8. Award Plaintiff compensatory damages according to proof and to the extent permitted by law;

9. Award nominal damages against each individual Defendant found to have violated Plaintiff's federal rights;

10. Award punitive damages against the individual Defendants according to proof;

11. Award all actual, statutory, and punitive damages authorized by California Civil Code §52 and 52.1;

12. Award recoverable costs and, should counsel appear, reasonable attorney's fees under 42 U.S.C. §1988 and California Civil Code §52.1; and

13. Grant such other and further relief as the Court determines just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues triable by jury.

2(21)